## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Maria Gill as Administrator of the Estate of Rogelio Duarte Espinoza and Otilia Fernandez-Yanez, Individually<br><br>Plaintiffs<br><br>vs.<br><br>Luiz Goncalves Foernges, MD.; Anne Theresa Lunney, MD; Matthew Scott Factor, MD; Darya Shevchenko, MD.; Thao Thidieu Alite, MD; Stanley Mark Poler, MD; Geisinger Medical Center; and Geisinger Clinic<br><br>Defendants | NO.  4:24-CV-00464<br><br>Chief Judge Brann<br><br>PROFESSIONAL LIABILITY ACTION<br><br>JURY of 12 DEMANDED |

## COMPLAINT

Plaintiffs, Maria Gill and Otilia Fernandez-Yanez, by and through their attorneys Rieders, Travis, Dohrmann, Mowrey, Humphrey & Waters, hereby file their Complaint against Defendants Luiz Goncalves Foernges, MD., Anne Theresa Lunney, MD, Matthew Scott Factor, MD, Darya Shevchenko, MD., Thao Thidieu Alite, MD., Stanley Mark Poler, MD., Geisinger Medical Center and Geisinger Clinic and set forth the following in support thereof.

## NATURE OF THE ACTION

1.     This is a wrongful death and personal injury action arising out of the injury to and death of Rogelio Duarte Espinoza because of negligent medical care and treatment provided at Geisinger Medical Center located at 100 N. Academy Avenue, Danville, (Middle District) Pennsylvania.

**JURISDICTION AND VENUE**

2.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332, because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00) and Plaintiffs are citizens of a state which is different from the state where the Defendants are domiciled, headquartered, or incorporated in the Commonwealth of Pennsylvania and have their principal places of business.

3.     Venue is proper in this district because the events related to this action occurred in Montour County, Pennsylvania, which falls within the jurisdiction of this Court.

**PARTIES**

4.     Rogelio Duarte Espinoza (hereinafter referred to as "Decedent") was born on April 4, 1938 and was 84 years of age at the time of his death on July 20, 2022. Decedent was domiciled in the State of Illinois.

5.     Plaintiff, Otilia Fernandez-Yanez, is the surviving spouse of Decedent who is entitled to recover through Decedent's Estate.  Plaintiff is domiciled in the State of Illinois.

6.     Plaintiff, Maria Gill, is a surviving issue of Decedent and was appointed as the Administratrix of the Estate of Rogelio Duarte Espinoza pursuant to Order Appointing Representative issued on December 27, 2023, by the Circuit Court of the 17th Judicial District Boone County, Illinois.  Plaintiff is domiciled in the State of Illinois.

7.     Defendant, Luiz Goncalves Foernges, MD (hereinafter referred to as "Defendant Foernges"), is, upon information and belief, an adult individual, a physician licensed to practice medicine in Pennsylvania who, at the time of the occurrences

alleged herein, specialized in trauma critical care (including trauma and gastrointestinal surgeries) and was providing medical care in the Middle District of Pennsylvania.  At all times relevant to this action, Defendant Foernges was an employee, servant, agent, ostensible or apparent of Defendants Geisinger Medical Center and/or Geisinger Clinic.  Plaintiffs are asserting a professional liability claim against this Defendant.

8.      Defendant, Anne Theresa Lunney, MD, (hereinafter referred to as "Defendant Lunney"), is, upon information and belief, an adult individual, a physician licensed to practice medicine in Pennsylvania who, at the time of the occurrences alleged herein, specialized in anesthesiology and was providing medical care in the Middle District of Pennsylvania.  At all times relevant to this action, Defendant Lunney was an employee, servant, agent, ostensible or apparent of Defendants Geisinger Medical Center and/or Geisinger Clinic.  Plaintiffs are asserting a professional liability claim against this Defendant.

9.      Defendant, Matthew Scott Factor, MD, (hereinafter referred to as "Defendant Factor"), is, upon information and belief, an adult individual, a physician licensed to practice medicine in Pennsylvania who, at the time of the occurrences alleged herein, specialized in general and trauma surgery and was providing medical care in the Middle District of Pennsylvania.  At all times relevant to this action, Defendant Factor was an employee, servant, agent, ostensible or apparent of Defendants Geisinger Medical Center and/or Geisinger Clinic.  Plaintiffs are asserting a professional liability claim against this Defendant.

10.     Defendant, Darya Shevchenko, MD, (hereinafter referred to as "Defendant Shevchenko"), is, upon information and belief, an adult individual, a physician licensed

3

to practice medicine in Pennsylvania who, at the time of the occurrences alleged herein, specialized in anesthesiology and was providing medical care in the Middle District of Pennsylvania.  At all times relevant to this action, Defendant Shevchenko was an employee, servant, agent, ostensible or apparent of Defendants Geisinger Medical Center and/or Geisinger Clinic.  Plaintiffs are asserting a professional liability claim against this Defendant.

11.     Defendant, Thao Thidieu Alite, MD, (hereinafter referred to as "Defendant Alite"), is, upon information and belief, an adult individual, a physician licensed to practice medicine in Pennsylvania who, at the time of the occurrences alleged herein, specialized in anesthesiology and was providing medical care in the Middle District of Pennsylvania.  At all times relevant to this action, Defendant Alite was an employee, servant, agent, ostensible or apparent of Defendants Geisinger Medical Center and/or Geisinger Clinic.  Plaintiffs are asserting a professional liability claim against this Defendant.

12.     Defendant, Stanley Mark Poler, MD, (hereinafter referred to as "Defendant Poler"), is, upon information and belief, an adult individual, a physician licensed to practice medicine in Pennsylvania who, at the time of the occurrences alleged herein, specialized in anesthesiology and was providing medical care in the Middle District of Pennsylvania.  At all times relevant to this action, Defendant Poler was an employee, servant, agent, ostensible or apparent of Defendants Geisinger Medical Center and/or Geisinger Clinic.  Plaintiffs are asserting a professional liability claim against this Defendant.

13.     Defendant, Geisinger Medical Center, is a corporation under the laws of the Commonwealth of Pennsylvania, is engaged in the business of providing health care and services to the public, and, at all times relevant to the occurrences set forth herein, provided services in the Middle District of Pennsylvania.  Plaintiffs are asserting a professional liability claim against this Defendant.

14.     Defendant, Geisinger Clinic, is a corporation under the laws of the Commonwealth of Pennsylvania, is engaged in the business of providing health care and services to the public, and, at all times relevant to the occurrences set forth herein, provided services in the Middle District of Pennsylvania.  Plaintiffs are asserting a professional liability claim against this Defendant.

15.     Defendants do business on a regular and substantial basis in the Middle District of Pennsylvania.  The witnesses and those with knowledge are either located in the Commonwealth of Pennsylvania or Commonwealth of Illinois.

## **FACTS**

16.     The preceding paragraphs are incorporated by reference as though set forth fully herein.

17.     On July 5, 2022, Decedent presented to the Convenient Care Plus Selinsgrove - Urgent Care Center for evaluation.  Dr. Anand Sewak noted, Decedent had a new onset of atrial fibrillation, bilateral pleural effusions and elevated bilirubin.  Decedent was advised to go to the Geisinger Medical Center Emergency Room for additional medical management.

18.     On July 5, 2022, as recommended, Decedent presented to Geisinger Medical Center's Emergency Room for evaluation of bilateral lower extremity swelling,

shortness of breath, abnormal chest X-ray results, abnormal liver function test results, epigastric pain when lying flat and jaundice.

19.     Upon presentation to Geisinger Medical Center's Emergency Department, Decedent was found to have choledocholithiasis (the presence of a gallstone in the common bile duct) with extra/intra-hepatic dilation, new onset of atrial fibrillation with rapid ventricular response and symptoms of congestive heart failure.  Decedent was admitted to Geisinger Medical Center.

20.     A CT scan was performed which revealed an approximately 8 mm gallstone within the distal common bile duct with probable associated mild intra-hepatic and extrahepatic biliary dilation.  The CT scan further revealed 1 mm residual gallstones in the gallbladder.  The CT scan impression documented a small, contracted gallbladder.

21.     On July 6, 2022, a gastroenterology consultation was performed by Ayusa Sinha, MD.  Dr. Sinha ordered an endoscopic retrograde cholangiopancreatography (hereinafter referred to as "ERCP") to be performed the same day.

22.     An endoscopy pre-procedure assessment was performed by S. Vikas Kumar, MD with a treatment plan that included proceeding with the planned ERCP.

23.     On July 6, 2022, Decedent underwent an ERCP, sphincterotomy and removal of the common bile duct stone, performed by Dr. Kumar.

24.     A 10 mm gallstone was found within the distal common bile duct that was causing the obstruction.  The gallstone was successfully removed.

25.     During the ERCP, Dr. Kumar placed a 10 French/10 cm plastic biliary stent into the common bile duct.

26.     Decedent's risk of developing a subsequent common bile duct obstruction was incredibly low based upon the fact that he had a sphincterotomy, common bile duct stent placement, 1 mm residual gallbladder stones, and no history of prior gallbladder stone blockages.

27.     Any residual gallbladder stones revealed on Decedent's CT scan would pass through the common bile duct stent without complication.

28.     During the July 6, 2022 procedures, Decedent was rated ASA3 by the anesthesia team indicating he had severe systemic disease.

29.     During the July 6, 2022 procedures, Decedent became hypoxic and had respiratory instability requiring intubation and blood pressure medications.

30.     After completion of the ERCP, the Internal Medicine team recommended surgery consultation for cholecystectomy.  Lengthy discussions were held with Defendant Foernges.

31.     On July 7, 2022, surgery consultation was performed by Defendant Foernges, who ordered laparoscopic cholecystectomy due to choledocholithiasis to be performed, semi-urgent, within 6-12 hours.

32.     There was no history of acute cholecystitis and no evidence of obstruction of the cystic duct, common bile duct or gallbladder.  Pursuant to the ERCP films, Decedent's ducts were wide open.  Decedent was at a very low risk of developing any further problems from gallbladder stones.

33.     There was no urgency or indication for performing a cholecystectomy at that time.

34.     Decedent's family expressed concern with the medical decision making to proceed with a cholecystectomy.

35.     On July 7, 2022, Decedent did not receive an arterial line, central line, or Foley catheter placement pre-operatively or intra-operatively.

36.     On July 7, 2022, Decedent underwent a laparoscopic cholecystectomy, with intra-operative cholangiogram and transversus abdominis plane block performed by Defendant Factor and assistant surgeon Andrew Shajari, MD.

37.     During the July 7, 2022, laparoscopic cholecystectomy, Decedent received high doses of pressors, drip phenylephrine, for 5 ½ hours without being appropriately monitored.

38.     Decedent's gallbladder was described as adherent to the common hepatic duct.  During dissection, a 2 mm hole was noted in the common bile duct where the gallbladder was adherent to it.

39.     An intra-operative cholangiogram was performed which confirmed a 2 mm injury to the common bile duct.

40.     Defendant Factor requested intra-operative consultation by gastroenterologist David Diehl, MD to perform an ERCP for treatment of a bile leak.

41.     Dr. Diehl presented to the operating room and performed an intra-operative ERCP which revealed one plastic stent originating in the biliary tree emerging from the major papilla.  Dr. Diehl proceeded to place a 10 cm stent into the common bile duct, "past the known bile leak."

42.     A post-ERCP cholangiography was performed which revealed a small leak.

8

43.    Dr. Ruchit N. Shah was called from the operating room with concerns about a bile leak.  Dr. Shah noted the providers proceeded to an urgent endoscopy and visualized a patent stent from the biliary tree in the major papilla.  A bile leak was found, and one plastic stent was placed into the common bile duct, past the known bile duct leak.

44.    Jackson-Pratt drains were also placed prior to surgical closure.

45.    Decedent's laparoscopic cholecystectomy was complicated by the 2 mm injury to the common bile duct, bleeding in the gallbladder fossa, and a known bile duct leak.

46.    Post-operatively Decedent was volume depleted, under resuscitated and suffered from shocked liver, along with acute renal failure.

47.    The medical care providers failed to record urine output pre-operatively and intra-operatively.

48.    Decedent was transferred from the operating room in critical condition to the intensive care unit for the rest of his care until his untimely demise.

49.    On July 8, 2022, Dr. Catherine Mieko Kwon noted, Decedent suffered continued complaints of abdominal pain and nausea.

50.    On July 8, 2022, Defendant Factor evaluated Decedent and noted diffuse abdominal pain, worse in his right upper quadrant, afebrile, vital signs stable with 4 norepinephrine and 6 dobutamine for pressure support.  Decedent's Bilirubin level was 2.5.

51.    On July 9, 2022, Dr. Joseph Blansfield noted continued abdominal pain and acute kidney injury.

52.     On July 9, 2022, Dr. Eric Mark Melnychuk also evaluated Decedent and noted the July 7, 2022, laparoscopic cholecystectomy was complicated by hepatic duct injury.  Dr. Melnychuk further noted, "there were some misconceptions about the rationale for the surgery which were clarified for the family."

53.     On July 9, 2022, Decedent had worsening renal function and acidosis that was affecting his mentation, breathing and overall critical illness.

54.     On July 10, 2022, Decedent was noted to be "still complaining of pain near his incision sites" and suffering from delirium.

55.     On July 11, 2022, at approximately 5:30 AM, Erin L. Bunnell, RN noted Decedent was "crying out in pain."  Nurse Bunnell contacted Sarah Petty, PAC via tiger text to come to bedside for evaluation of severe pain in right flank.

56.     Decedent became tachycardic and tachypneic, with his right leg appearing more swollen.

57.     On July 11, 2022, PAC Petty noted Decedent was complaining of increased pain in abdomen that occurred during bath turn.  Diffuse reported tenderness to palpation of the abdomen, worse in the right lower quadrant and flank.  Drains with continuous serosanguineous output.

58.     On July 11, 2022, Decedent experienced worsening abdominal pain and respiratory distress which required intubation.

59.     On July 12, 2022, labs were performed which revealed Decedent's Bilirubin level was 3.  A HIDA scan was also performed which revealed "findings concerning for bile leak at the gallbladder fossa, possibly from the duck of Luschka."

60.     On July 12, 2022, Decedent was examined at bedside by Chinedu Nwachukwu, MD, who noted Decedent remained intubated and required vasopressors.

61.     On July 12, 2022, Decedent was also evaluated by Ayobami Fatunmbi, MD, who noted Decedent was experiencing 300-400ml output from each Jackson-Pratt drain.  Dr. Fatunmbi further noted, "HIDA today shows bile leak" and "son at bedside who notes patient was recently complaining of pain and recently received pain medication.  Patient is intubated and intermittently opens eyes."

62.     On July 13, 2022, Umair Iqbal, MD evaluated Decedent and noted, patient was intubated for acute respiratory distress in the setting of tachycardia and abdominal pain.  Decedent suffered from increased bilirubin and the HIDA scan was concerning for a bile leak.  Dr. Iqbal noted the patient remained oliguric (urine output less than 400 ml per day) with slight worsening of renal function but there was no indication for endoscopic intervention at this time.  Dr. Iqbal's assessment included: Acute vent dependent hypoxic and hypercapnic respiratory failure; Septic and hypovolemic shock requiring pressor support; Shock liver; Atrial fibrillation.

63.     On July 14, 2022, Decedent was noted to be intubated, required continued vasopressors and remained oliguric.  The treatment plan was to continue to manage pain and monitor Jackson-Pratt drain output.

64.     On July 15, 2022, Nurse Bunnell noted Decedent was having abdominal pain, heart rate was 140-150, and respiratory rate was 30-50.

65.     On July 16, 2022, labs were performed which revealed Decedent's Bilirubin level was 5.

66.     On July 17, 2022, Decedent experienced an abrupt decrease in the Jackson-Pratt drain output.

67.     On July 18, 2022, labs were performed which revealed Decedent's Bilirubin level was 16 and he had a worsening of liver enzymes.  A repeat CT scan was performed which showed worsening loculated fluid collection with foci of air suggestive of infection.  Interventional radiology drained 1.5 liters of feculent bilious fluid then placed a third drain in Decedent's abdomen.

68.     On July 19, 2022, Defendant Factor led a meeting with Decedent's family to discuss medical care up to this point and Decedent's decline due to continued biliary leak with subsequent intra-abdominal infection.  The decision was made to do comfort care and change code to DNR/DNI.

69.     Decedent's condition continued to deteriorate.

70.     Decedent suffered from an uncontrolled bile duct leak and undrained bile contained in his abdominal cavity which led to septic shock and multi-system organ failure resulting in Decedent's untimely demise on July 20, 2022.

## COUNT I NEGLIGENCE
### Plaintiffs v. Defendant Foernges

71.     The preceding paragraphs are incorporated by reference as though set forth fully herein.

72.     Defendant Foernges held himself out to be a health care provider who possessed skill and knowledge in his specialty of trauma critical care (including trauma and gastrointestinal surgeries) and held himself out to the public and to Decedent as so qualified.

73.     Defendant Foernges failed to provide reasonable care, was negligent, caused injury, and increased the risk of harm as aforesaid and as follows:

   73.1.   Negligently determined indication for laparoscopic cholecystectomy;

   73.2.   Negligently choosing to order performance of a laparoscopic cholecystectomy due to choledocholithiasis to be performed, semi-urgent, within 6-12 hours on July 7, 2022;

   73.3.   Negligently subjecting Decedent to a second general anesthetic and abdominal operation within 24-hours;

   73.4.   Failure to allow Decedent to recover from the July 6, 2022 procedures prior to proceeding with the July 7, 2022 laparoscopic cholecystectomy;

   73.5.   Failure to improve Decedent's cardiac and pulmonary status prior to subjecting him to a second general anesthesia procedure; and

   73.6.   Failure to appreciate Decedent's inability to tolerate the July 7, 2022, laparoscopic cholecystectomy.

74.     As a direct, proximate, and factual result of the actions and inactions of Defendant Foernges as set forth herein, Decedent sustained the injuries and damages previously noted or, alternatively, Defendant Foernges' actions and inactions as set forth herein increased the risk that Decedent would sustain the damages and injuries as previously set forth.

   WHEREFORE, Plaintiffs demand judgment for a sum in excess of $75,000.00, exclusive of interest and costs to which Plaintiffs are entitled.

## COUNT II NEGLIGENCE
## Plaintiffs v. Defendant Lunney

75.     The preceding paragraphs are incorporated by reference as though set forth fully herein.

76.     Defendant Lunney held herself out to be a health care provider who possessed skill and knowledge in her specialty of anesthesiology and held herself out to the public and to Decedent as so qualified.

77.     Defendant Lunney failed to provide reasonable care, was negligent, caused injury, and increased the risk of harm as aforesaid and as follows:

77.1.   Negligently providing anesthesia pre-operative clearance for Decedent to undergo a laparoscopic cholecystectomy on July 7, 2022;

77.2.   Failure to appreciate the risks of the July 7, 2022 cholecystectomy;

77.3.   Failure to ensure patient evaluation and consultation by a Cardiologist following the July 6, 2022 procedures prior to proceeding with the July 7, 2022 laparoscopic cholecystectomy;

77.4.   Failure to ensure medication reconciliation and/or adjustments prior to the July 7, 2022 cholecystectomy;

77.5.   Failure to ensure placement of an arterial line for second-to-second blood pressure readings during the July 7, 2022 cholecystectomy;

77.6.   Failure to ensure placement of a central line during the July 7, 2022 cholecystectomy;

77.7.   Failure to ensure placement of a Foley catheter to monitor urine output prior to and during the July 7, 2022 cholecystectomy; and

77.8.   Failure to monitor Decedent's risk for multi-system dysfunction.

78.      As a direct, proximate, and factual result of the actions and inactions of Defendant Lunney as set forth herein, Decedent sustained the injuries and damages previously noted or, alternatively, Defendant Lunney's actions and inactions as set forth herein increased the risk that Decedent would sustain the damages and injuries as previously set forth.

WHEREFORE, Plaintiffs demand judgment for a sum in excess of $75,000.00, exclusive of interest and costs to which Plaintiffs are entitled.

### COUNT III NEGLIGENCE
### Plaintiffs v. Defendant Factor

79.   The preceding paragraphs are incorporated by reference as though set forth fully herein.

80.   Defendant Factor held himself out to be a health care provider who possessed skill and knowledge in his specialty of general and trauma surgery and held himself out to the public and to Decedent as so qualified.

81.   Defendant Factor failed to provide reasonable care, was negligent, caused injury, and increased the risk of harm as aforesaid and as follows:

81.1.   Negligently choosing to perform a laparoscopic cholecystectomy on Decedent on July 7, 2022;

81.2.   Negligently performing a laparoscopic cholecystectomy on Decedent on July 7, 2022;

81.3.   Negligently subjecting Decedent to a second general anesthetic and abdominal operation within 24-hours;

81.4.    Failure to allow Decedent to recover from the July 6, 2022

procedures prior to proceeding with the July 7, 2022 laparoscopic

cholecystectomy;

81.5.    Failure to improve Decedent's cardiac and pulmonary status prior

to subjecting him to a second general anesthesia procedure;

81.6.    Failure to appreciate Decedent's ability to tolerate the July 7, 2022

laparoscopic cholecystectomy;

81.7.    Failure to adequately communicate with Anesthesia during

Decedent's treatment;

81.8.    Failure to act upon the post-operative bile leak;

81.9.    Failure to perform a second intra-operative ERCP on July 7, 2022

to reposition the common bile stent(s) to ensure the bile duct leak

was controlled;

81.10.   Failure to place a percutaneous drain on July 7, 2022 or at any time

prior to July 19, 2022;

81.11.   Failure to timely recognize an uncontrolled leak from the bile duct;

81.12.   Failure to timely recognize Decedent had undrained bile within his

abdominal cavity;

81.13.   Failure to adequately treat the common bile duct injury;

81.14.   Failure to adequately contain the bile leak;

81.15.   Failure to recognize and act upon Decedent's multiple abnormal

Bilirubin lab results; and

81.16. Failure to act upon Decedent's increasing abdominal pain, significant amounts of drain output and CT scan results.

As a direct, proximate, and factual result of the actions and inactions of Defendant Factor as set forth herein, Decedent sustained the injuries and damages previously noted or, alternatively, Defendant Factor's actions and inactions as set forth herein increased the risk that Decedent would sustain the damages and injuries as previously set forth.

WHEREFORE, Plaintiffs demand judgment for a sum in excess of $75,000.00, exclusive of interest and costs to which Plaintiffs are entitled.

## COUNT IV NEGLIGENCE
### Plaintiffs v. Defendant Shevchenko

82.     The preceding paragraphs are incorporated by reference as though set forth fully herein.

83.     Defendant Shevchenko held himself out to be a health care provider who possessed skill and knowledge in his specialty of anesthesiology and held himself out to the public and to Decedent as so qualified.

84.     Defendant Shevchenko failed to provide reasonable care, was negligent, caused injury, and increased the risk of harm as aforesaid and as follows:

84.1.   Failure to appreciate the risks of the July 7, 2022 cholecystectomy;

84.2.   Failure to ensure patient evaluation and consultation by a Cardiologist following the July 6, 2022 procedures prior to proceeding with the July 7, 2022 laparoscopic cholecystectomy;

84.3.   Failure to ensure medication reconciliation and/or adjustments prior to the July 7, 2022 cholecystectomy;

84.4.   Failure to ensure placement of an arterial line for second-to-second blood pressure readings during the July 7, 2022 cholecystectomy;

84.5.   Failure to ensure placement of a central line during the July 7, 2022 cholecystectomy;

84.6.   Failure to ensure placement of a Foley catheter to monitor urine output prior to and during the July 7, 2022 cholecystectomy;

84.7.   Failure to adequately communicate with the July 7, 2022 surgeon during Decedent's laparoscopic cholecystectomy; and

84.8.   Failure to monitor Decedent's risk for multi-system dysfunction.

85.   As a direct, proximate, and factual result of the actions and inactions of Defendant Shevchenko as set forth herein, Decedent sustained the injuries and damages previously noted or, alternatively, Defendant Shevchenko's actions and inactions as set forth herein increased the risk that Decedent would sustain the damages and injuries as previously set forth.

WHEREFORE, Plaintiffs demand judgment for a sum in excess of $75,000.00, exclusive of interest and costs to which Plaintiffs are entitled.

## COUNT V NEGLIGENCE
### Plaintiffs v. Defendant Alite

86.   The preceding paragraphs are incorporated by reference as though set forth fully herein.

87.     Defendant Alite held himself out to be a health care provider who possessed skill and knowledge in his specialty of anesthesiology and held himself out to the public and to Decedent as so qualified.

88.     Defendant Alite failed to provide reasonable care, was negligent, caused injury, and increased the risk of harm as aforesaid and as follows:

88.1.   Failure to appreciate the risks of the July 7, 2022 cholecystectomy;

88.2.   Failure to ensure patient evaluation and consultation by a Cardiologist following the July 6, 2022 procedures prior to proceeding with the July 7, 2022 laparoscopic cholecystectomy;

88.3.   Failure to ensure medication reconciliation and/or adjustments prior to the July 7, 2022 cholecystectomy;

88.4.   Failure to ensure placement of an arterial line for second-to-second blood pressure readings during the July 7, 2022 cholecystectomy;

88.5.   Failure to ensure placement of a central line during the July 7, 2022 cholecystectomy;

88.6.   Failure to ensure placement of a Foley catheter to monitor urine output prior to and during the July 7, 2022 cholecystectomy;

88.7.   Failure to adequately communicate with the July 7, 2022 surgeon during Decedent's laparoscopic cholecystectomy; and

88.8.   Failure to monitor Decedent's risk for multi-system dysfunction.

89.     As a direct, proximate, and factual result of the actions and inactions of Defendant Alite as set forth herein, Decedent sustained the injuries and damages previously noted or, alternatively, Defendant Alite's actions and inactions as set forth

herein increased the risk that Decedent would sustain the damages and injuries as previously set forth.

WHEREFORE, Plaintiffs demand judgment for a sum in excess of $75,000.00, exclusive of interest and costs to which Plaintiffs are entitled.

## COUNT VI NEGLIGENCE
### Plaintiffs v. Defendant Poler

90.     The preceding paragraphs are incorporated by reference as though set forth fully herein.

91.     Defendant Poler held himself out to be a health care provider who possessed skill and knowledge in his specialty of anesthesiology and held himself out to the public and to Decedent as so qualified.

92.     Defendant Poler failed to provide reasonable care, was negligent, caused injury, and increased the risk of harm as aforesaid and as follows:

92.1.   Failure to appreciate the risks of the July 7, 2022 cholecystectomy;

92.2.   Failure to ensure patient evaluation and consultation by a Cardiologist following the July 6, 2022 procedures prior to proceeding with the July 7, 2022 laparoscopic cholecystectomy;

92.3.   Failure to ensure medication reconciliation and/or adjustments prior to the July 7, 2022 cholecystectomy;

92.4.   Failure to ensure placement of an arterial line for second-to-second blood pressure readings during the July 7, 2022 cholecystectomy;

92.5.   Failure to ensure placement of a central line during the July 7, 2022 cholecystectomy;

92.6.   Failure to ensure placement of a Foley catheter to monitor urine output prior to and during the July 7, 2022 cholecystectomy;

92.7.   Failure to adequately communicate with the July 7, 2022 surgeon during Decedent's laparoscopic cholecystectomy; and

92.8.   Failure to monitor Decedent's risk for multi-system dysfunction.

93.   As a direct, proximate, and factual result of the actions and inactions of Defendant Poler as set forth herein, Decedent sustained the injuries and damages previously noted or, alternatively, Defendant Poler's actions and inactions as set forth herein increased the risk that Decedent would sustain the damages and injuries as previously set forth.

WHEREFORE, Plaintiffs demand judgment for a sum in excess of $75,000.00, exclusive of interest and costs to which Plaintiffs are entitled.

## COUNT VII VICARIOUS LIABILITY CLAIM
### Plaintiffs v. Geisinger Medical Center

94.   The preceding paragraphs are incorporated by reference as though set forth fully herein.

95.   Geisinger Medical Center is responsible for the actions and inactions of its employees, servants, agents, ostensible or apparent, who provided care and treatment to Decedent, during the time period following his presentation to the Geisinger Medical Center Emergency Department on July 5, 2022 until his demise on July 20, 2022.  The employees, agents, and servants, ostensible or otherwise, include all defendants and all such other medical providers reflected in the medical records as involved in and/or

responsible for and/or supervising those responsible for the care and treatment rendered to Decedent at all times relevant to this action.

96.    At all times relevant to this action, all Defendants, upon information and belief, were employed by or acting on behalf of this Defendant.

97.    At all times relevant to this action, all Defendants negligently caused and/or increased the risk of harm to Decedent.

98.    As a direct, proximate, and factual result of the actions and inactions of Defendants as set forth herein, Decedent sustained the injuries and damages previously noted or, alternatively, Defendants actions and inactions as set forth herein increased the risk that Decedent would sustain the damages and injuries as previously set forth.

WHEREFORE, Plaintiffs demand judgment for a sum in excess of $75,000.00, exclusive of interest and costs to which Plaintiffs are entitled.

## COUNT VIII VICARIOUS LIABILITY
## Plaintiffs v. Geisinger Clinic

99.    The preceding paragraphs are incorporated by reference as though set forth fully herein.

100.    Geisinger Clinic is responsible for the actions and inactions of its employees, servants, agents, ostensible or apparent, who provided care and treatment to Decedent, during the time period following his presentation to the Geisinger Medical Center Emergency Department on July 5, 2022 until his demise on July 20, 2022.  The employees, agents, and servants, ostensible or otherwise, include all defendants and all such other medical providers reflected in the medical records as involved in and/or

responsible for and/or supervising those responsible for the care and treatment rendered to Decedent at all times relevant to this action.

101.    At all times relevant to this action, all Defendants, upon information and belief, were employed by or acting on behalf of this Defendant.

102.    At all times relevant to this action, all Defendants negligently caused and/or increased the risk of harm to Decedent.

103.    As a direct, proximate, and factual result of the actions and inactions of Defendants as set forth herein, Decedent sustained the injuries and damages previously noted or, alternatively, Defendants actions and inactions as set forth herein increased the risk that Decedent would sustain the damages and injuries as previously set forth.

WHEREFORE, Plaintiffs demand judgment for a sum in excess of $75,000.00, exclusive of interest and costs to which Plaintiffs are entitled.

## COUNT IX WRONGFUL DEATH
## Plaintiffs v. All Defendants

104.    The preceding paragraphs are incorporated by reference as though set forth fully herein.

105.    Due to the conduct of Defendants, as aforesaid, Decedent died and has left individuals entitled to recover for his death.

106.    Plaintiffs bring this action under and by virtue of 42 Pa. C.S. § 8301 and Pa. R.C.P. 2202(a) on behalf of Otilia Fernandez-Yanez and on behalf of those entitled to recover damages for the wrongful death of Decedent.  Plaintiffs, by reason of the death of Decedent, are entitled to recover in addition to other damages, amounts for

reasonable hospital, nursing and medical expenses, funeral expenses, financial losses, including loss of right to future maintenance and support and other expenses of administration of the estate.

107.   This action is filed on behalf of the following individuals who, as beneficiaries, are entitled by law to recover damages in this matter:

      a)  Otilia Fernandez-Yanez, Spouse of Decedent, who resides at 120 Heath Cliff Dr. Se, Popular Grove, IL 61065;

      b)  Maria Gill, daughter of Decedent, who resides at 120 Heath Cliff Dr. Se, Popular Grove, IL 61065;

      c)  Anabel Menifee, daughter of Decedent, who resides at 175 Kratzerville Rd, Winfield, PA 17889;

      d)  Rogelio Duarte, Jr., son of Decedent, who resides at 10907 2nd St, Roscoe, IL 61073; and

      e)  Oscar Duarte Fernandez, son of Decedent, who resides at 11428 Hickory Grove Church Rd, Raleigh, NC 27613.

108.   Decedent's statutory survivors suffered the loss of Decedent's services, companionship, society, comfort, guidance, solace, and protection, and other damages as are recoverable under the Wrongful Death Act of Pennsylvania.

109.   Decedent did not bring an action for personal injuries during his lifetime.

WHEREFORE, Plaintiffs demand judgment for a sum in excess of $75,000.00, exclusive of interest and costs to which Plaintiffs are entitled.

## COUNT X – SURVIVAL ACTION
### Plaintiffs v. All Defendants

110.  The preceding paragraphs are incorporated by reference as though set forth fully herein.

111.  Plaintiffs bring this action on behalf of the Estate of Decedent under and by virtue of the laws of the Commonwealth of Pennsylvania.  42 Pa. C.S. §§ 8302 and 3373.

112.  Plaintiffs' claims, on behalf of said Estate, damages suffered by reason of the death of Decedent, include the following:

112.1. Decedent's mental and physical pain, suffering and inconvenience prior to his death;

112.2. Decedent's financial losses suffered as a result of his death;

112.3. Decedent's loss of enjoyment of life prior to death; and

112.4. Such other damages as are recoverable in a survival action.

WHEREFORE, Plaintiffs demand judgment for a sum in excess of $75,000.00, exclusive of interest and costs to which Plaintiffs are entitled.

## COUNT XI LOSS OF CONSORTIUM
### Otilia Fernandez-Yanez v. All Defendants

113.  The preceding paragraphs are incorporated by reference as though set forth fully herein.

114.  As a direct and proximate result of the actions, inactions and negligence of Defendants and as a result of the injuries and damages to her husband, Rogelio Duarte Espinoza, Deceased, wife Otilia Fernandez Yanez has sustained a loss of society, comfort, companionship, services and consortium of her husband.

WHEREFORE, Plaintiffs demand judgment for a sum in excess of $75,000.00, exclusive of interest and costs to which Plaintiffs are entitled.

RIEDERS, TRAVIS, DOHRMANN,
MOWREY, HUMPHREY & WATERS

/s/ *Corey J. Mowrey*

_____
Corey J. Mowrey, Esquire PA 307507
Attorney for Plaintiffs
161 West Third Street
Williamsport, PA 17701
Ph: 570-323-8711
Fx: 570-323-4192
Em: cmowrey@riederstravis.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Maria Gill as Administrator of the Estate of Rogelio Duarte Espinoza and Otilia Fernandez-Yanez, Individually | NO. |
| | JUDGE: |
| Plaintiffs | PROFESSIONAL LIABILITY ACTION |
| vs. | JURY of 12 DEMANDED |
| Luiz Goncalves Foernges, MD.; Anne Theresa Lunney, MD; Matthew Scott Factor, MD; Darya Shevchenko, MD.; Thao Thidieu Alite, MD; Stanley Mark Poler, MD; Geisinger Medical Center; and Geisinger Clinic | |
| Defendants | |

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

RIEDERS, TRAVIS, DOHRMANN,
MOWREY, HUMPHREY & WATERS

/s/ *Corey J. Mowrey*

_____
Corey J. Mowrey, Esquire PA 307507
Attorney for Plaintiffs
161 West Third Street
Williamsport, PA 17701
Ph: 570-323-8711
Fx: 570-323-4192
Em: cmowrey@riederstravis.com